[Cite as *In re S.D.*, 2014-Ohio-2528.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99763**

## IN RE: S.D.
## A Minor Child

### JUDGMENT:
AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-11115723

**BEFORE:** Celebrezze, P.J., Jones, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 12, 2014

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender
By:     Amanda J. Powell
Assistant State Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Michael Hustick
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Juvenile appellant, S.D., appeals his delinquency adjudication, which resulted in his internment in a juvenile detention facility until his twenty-first birthday. Appellant claims he was not competent to stand trial, and the competency evaluations relied on by the trial court were materially flawed. Appellant also argues that he was denied his right to allocution before disposition. After a thorough review of the record and law, we affirm appellant's adjudication as a delinquent minor, but vacate the court's disposition and remand the matter so appellant may be afforded the opportunity to be heard prior to disposition.

## I. Factual and Procedural History

{¶2} On July 24, 2011, when appellant was 15 years old, Pedro Sarsama and Vanessa Willaman, both students at Cleveland State University, drove to a nearby gas station to buy drinks and a pack of cigarettes. Willaman drove, parked, and walked inside while Sarsama waited in the car. Willaman purchased some items and walked out of the store. Immediately outside the door, she exchanged words with a man hanging around the entrance. She walked to her car, got in, and started a conversation with Sarsama. The man she spoke with earlier approached the driver's side of the vehicle and started making unwanted advances toward Willaman. He was accompanied by a young man, whom Sarsama later identified as appellant. The older man, whose identity remains a mystery, leaned on the car. Willaman demanded that he get off her car. The man then produced a handgun and pulled Willaman from the vehicle. He began viciously beating

her with the handle of the gun. Stunned, Sarsama began to get out of the car but was stopped when appellant got in and took Willaman's purse and Sarsama's cell phone.

{¶3} The attendant working inside the gas station store, Jordan Martin, received a call on his cell phone from an individual in the parking lot alerting him to a situation outside. Martin walked out of the store and saw a person lying on the ground partially obscured by a vehicle and a crowd of people. He recognized appellant among the group. One person was beating a woman with the handle of a gun while she was lying on the ground. Martin got out his own gun and fired into the air. The crowd rapidly disbursed, with the armed attacker and appellant fleeing together.

{¶4} Sarsama ran to help Willaman as she lay in the parking lot. He attempted to stop the gushing flow of blood that began to pool on the concrete. Police and emergency personnel arrived shortly thereafter and transported Willaman to the hospital where she remained for four days. As a result of trauma to her head, she does not remember the attack or the events immediately preceding it.

{¶5} Martin knew appellant and was able to identify him as a member of the crowd he observed. Appellant was arrested, and a complaint was filed August 30, 2011, in the Cuyahoga County Common Pleas Court, Juvenile Division, alleging that appellant was delinquent of two counts of aggravated robbery in violation of R.C. 2911.01(A)(1) (felonies of the first degree if committed by an adult), and one count of felonious assault

in violation of R.C. 2903.11(A)(1) (a felony of the second degree if committed by an adult).[1] These counts carried one- and three-year firearm specifications.

{¶6} On September 20, 2011, the state moved the trial court to hold an amenability hearing to determine whether appellant would be bound over to the jurisdiction of the general division of the common pleas court or remain in the juvenile division. At the same pretrial hearing, appellant's attorney moved that appellant be evaluated for competency. The trial court delayed the probable cause and bind-over hearings and ordered appellant evaluated by the court psychiatric clinic, which occurred on February 22, 2012. The court also appointed a guardian ad litem for appellant.

{¶7} The psychological evaluation resulted in a finding that appellant was not competent to stand trial. The evaluation and report done by Dr. Steven Neuhaus, which was stipulated to by both sides, found that appellant had significant psychological issues that prevented him from effectively participating in the proceedings. Dr. Neuhaus recommended that appellant be treated with medications or adjustment to medications and be housed in a residential facility for services and treatment. However, Dr. Neuhaus could not identify any facility that would take appellant. The state sought to have appellant monitored and treated in the juvenile facility where he was currently being housed after failing to abide by the terms of his release. The trial court granted the state's request on March 13, 2012. The court also ordered an additional competency

---

[1] Appellant was later charged in two other cases — one for escape when he violated the conditions of his bond and the other for assaulting a fellow youth at a detention facility.

evaluation to be performed within two to three weeks. Dr. Neuhaus again interviewed appellant on April 3, 2012, in compliance with this order.

{¶8} At a competency hearing held on May 23, 2012, Dr. Neuhaus testified that appellant had responded well to treatment. It was the doctor's opinion that appellant sufficiently understood the proceedings and was able to participate in his defense. Dr. Neuhaus opined that while appellant suffered from severe psychological problems, medication had stabilized him to the point where he was competent to stand trial. At the close of the hearing, the trial court found appellant competent and set a date for a probable cause hearing. On June 21, 2012, the court issued a written decision finding appellant competent.

{¶9} After a hearing held on September 11, 2012, the trial court determined that there was probable cause to believe appellant committed the crimes described in the complaint. The court also ordered that an investigation and report be completed into appellant's background, including an additional psychological evaluation. The court then held a bind-over hearing on October 25, 2012. At that hearing, the court heard arguments and took into consideration appellant's reduced mental acuity and psychological issues as well as the violent nature of the crimes alleged. The juvenile court determined to retain jurisdiction over appellant, and a trial date was set.

{¶10} A trial, held on February 11, 2013, resulted in the adjudication of appellant as a delinquent minor. The trial court found that appellant had committed crimes as set forth in the complaint. The court stayed disposition until two other cases were resolved.

On March 6, 2013, a disposition hearing was held. The trial court's disposition called for appellant to be placed in a juvenile detention facility until his twenty-first birthday.

{¶11} Appellant then filed the instant appeal, assigning three errors:

I. S.D. was denied his right to due process of law because he was adjudicated delinquent when he was incompetent to stand trial, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

II. S.D. was denied his right to due process of law when the juvenile court determined him competent to stand trial outside the parameters of R.C. 2152.57(A), 2152.58(A) and (D), the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 16 of the Ohio Constitution.

III. The juvenile court violated S.D.'s rights to due process and equal protection when it imposed disposition without providing him the opportunity for allocution, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Sections 2 and 16 of the Ohio Constitution, Crim.R. 32, Juv.R. 29, and Juv.R. 34.

## II. Law and Analysis

### A. Competent to Stand Trial

{¶12} In his first assignment of error, appellant maintains that he was not competent to stand trial, and the trial court erred in finding him competent. "[A] person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). This fundamental legal principle is inclusive of juvenile proceedings. *In re R.H.*, 8th Dist. Cuyahoga No. 98426, 2013-Ohio-1030, ¶ 9. Therefore, if sufficient indicia of incompetency arises during the pendency of the proceedings, the juvenile court is

required to hold a hearing and determine if the juvenile is competent to stand trial. *State v. Were*, 94 Ohio St.3d 173, 175, 2002-Ohio-481, 761 N.E.2d 591.

{¶13} In juvenile cases, competency determinations are governed by R.C. 2152.51 to 2152.59. Appellant first complains that the trial court erred when it found him competent to stand trial.

{¶14} R.C. 2152.56(B) mandates that a competency assessment report shall address the child's *capacity* to do all of the following:

(1) Comprehend and appreciate the charges or allegations against the child;

(2) Understand the adversarial nature of the proceedings, including the role of the judge, defense counsel, prosecuting attorney, guardian ad litem or court-appointed special assistant, and witnesses;

(3) Assist in the child's defense and communicate with counsel;

(4) Comprehend and appreciate the consequences that may be imposed or result from the proceedings.

{¶15} Appellant complains that the trial court erred in relying on any of the competency evaluations performed by Dr. Neuhaus because a discussion of the exact crimes and elements appellant was accused of committing is not apparent from the report. Appellant cites to the fact that one of Dr. Neuhaus's reports indicates appellant was facing "aggravated robbery with possible gun specification (felony 1) [and] aggravated assault (felony 5)." In fact, appellant faced aggravated robbery with gun specifications and felonious assault charges. Appellant complains that at no time did Dr. Neuhaus discuss with him that he was charged with two counts of first-degree-felony aggravated

robbery, one count of second-degree-felony felonious assault, and related firearm specifications.

**{¶16}** A discussion of the exact charges and elements of a case are not required. The statute only mandates that the evaluation examine the individual's *capacity* to "[c]omprehend and appreciate the charges or allegations * * *." R.C. 2152.56(B). Dr. Neuhaus discussed with appellant the aggravated robbery charge and indicated appellant had a sufficient understanding of it, the possible consequences of participating in the proceedings, communicating with his attorney, and helping mount an appropriate defense. Appellant, heeding the advice of counsel, would also not discuss the charges or their factual bases. Appellant's responses to several hypothetical situations brought Dr. Neuhaus to the conclusion that appellant sufficiently understood his situation and the consequences. This, along with the charges that were discussed, reasonably led to the conclusion that appellant was capable of understanding the specific charges in the case and gave the trial court sound footing in finding appellant competent.

**{¶17}** Perhaps the best way for an evaluator to determine if individuals comprehend the charges levied against them is to discuss those specific charges. However, the failure to do so does not lead to the conclusion that the evaluation is fatally flawed. In *In re R.H.,* 8th Dist. Cuyahoga No. 98426, 2013-Ohio-1030, this court found that it was not plain error for the trial court to use a competency report generated in one case to establish that the same juvenile was also competent in another contemporaneous case. This court stated:

Although we find error, we do not find that the trial court's error was so plain that it created an "obvious defect in the trial proceedings," nor that the error "affected the outcome of the trial."

\* \* \*

\* \* \* Although the competency assessment was ordered for the aggravated assault case, the assessment does reference a "breaking and entering" case where R.H. reported to the evaluator that he refused a plea bargain, against his attorney's advice, because he was innocent. Although the burglary case did not involve a breaking and entering charge, the elements of these crimes are similar, and based on the surrounding facts, we infer that R.H. was referring to the burglary case.

*Id*. at ¶ 15-16.

{¶18} In *R.H.*, there was a stipulation to the competency report, which appellant claims distinguishes the case from his situation. Here, the report was not stipulated to, but appellant never raised any issue with the breadth of the report or the discussion of the charges involved therein. Further, appellant's counsel did not cross-examine Dr. Neuhaus on these points. Appellant failed to raise objections or point out the defects in the report to the trial court and offered nothing to question his ability to understand the charges levied against him. Where errors have not been brought to the court's attention at a time when they could be addressed, they are waived on appeal. *State v. McKee*, 91 Ohio St.3d 292, 294, 744 N.E.2d 737 (2001) ("Errors that arise during a trial that are not brought to the attention of the court are ordinarily waived and may not be raised on appeal unless there is plain error, i.e., but for the error, the outcome of the trial clearly would have been otherwise"), citing Crim.R. 52(B); *State v. Johnson*, 88 Ohio St.3d 95, 111, 723 N.E.2d 1054, (2000). Therefore, similar to the appellant in *R.H.*, appellant has

waived all but plain error. *R.H.* at ¶ 8, citing *State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 29, ("R.H. did not object to any aspect of the competency assessment at the trial-court level. * * * Accordingly, we review this assignment of error only for plain error").

{¶19} In this case, the evaluator discussed the nature of the charges, but referenced aggravated assault rather than felonious assault. The difference between aggravated assault and felonious assault in terms of evaluating whether an individual can understand what is required for proof is inconsequential. In fact, one is merely an inferior-degree offense of the other. The two crimes contain the same elements with a mitigating factor built into the statute that decreases the punishment for aggravated assault. *See State v. Deem*, 40 Ohio St.3d 205, 210-211, 533 N.E.2d 294 (1988); *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 11.

{¶20} If this was the most serious offense appellant faced, there may be some amount of prejudice because the aggravated assault charge was described in Dr. Neuhaus's report as a fifth-degree felony if committed by an adult, while the felonious assault charge was a higher degree of felony. However, appellant faced other charges classified as first-degree felonies if committed by an adult. Also discussed was the possible consequence that appellant would be remanded to a facility, which Dr. Neuhaus interpreted to mean a detention facility.

{¶21} A competency evaluation does not require the evaluator to act as if he is an attorney and explain the minutia of criminal procedure. The evaluator must assess

whether the individual, in conjunction with advice from legal counsel, is capable of assisting counsel, understanding those things necessary for a proper defense, and for the individual to make informed decisions.

{¶22} Appellant makes much that Dr. Neuhaus did not discuss the fact that he could face trial as an adult. However, he was not bound over to the jurisdiction of the general division of the common pleas court. Therefore, a failure to address this aspect of his case is not plain error.

{¶23} Appellant also claims that Dr. Neuhaus erred when he opined that appellant was competent. Pointing to mainly the first competency evaluation, appellant argues that he was incompetent and that no restorative services were provided between the time of the first evaluation and the second. He only received an adjustment in his medication. The second evaluation revealed that appellant was more oriented and able to focus on a given task, but that he still had some difficulty focusing. Dr. Neuhaus testified that appellant required more time and direction from counsel, but could adequately understand what was going on and maintain sufficient focus to participate. There is nothing in the record that transpired from the adjudicatory hearing to contradict this assessment. Further, there is nothing in the record that demonstrates appellant's mental state had changed since the competency hearing. A significant period of time passed between the competency evaluation and the adjudicatory hearing. However, appellant's attorney never brought up a change in appellant's mental state and none was apparent in the record. The attorney also did not indicate any difficulty dealing with appellant.

Appellant argues that the record is unclear about his mental state during trial and his ability to participate in the proceedings because he was asked only one question to which he gave an appropriate one-word response, and the trial court once asked if appellant was awake.

**{¶24}** If there were changes in his mental state, it was incumbent upon appellant's attorney to bring them to the court's attention and put them on the record. The silent record presumably means that appellant's attorney was able to communicate effectively with appellant and that no further issues arose after appellant was restored to competency.

**{¶25}** There was sufficient credible evidence for the trial court to find that appellant was competent to stand trial. Therefore, appellant's first assignment of error is overruled.

### B. Procedural Deficiencies

**{¶26}** Appellant advances a number of issues where he contends the trial court procedurally erred when finding him competent. Appellant complains:

> The competency determination violates R.C. 2152.57(A) or R.C. 2152.58(A) and (D), because the competency evaluation was conducted by someone not officially appointed by the court to conduct the evaluation in violation of R.C. 2152.57(A); was submitted to the court at the hearing on May 23, 2013, fifty calendar days after the evaluation was ordered in violation of R.C. 2152.57(A); the court conducted the competency hearing thirty-six calendar days after the evaluation was performed, but on the same day it was submitted to the court in violation of R.C. 2152.58(A); and, the court made a written determination of S.D.'s competence twenty business days after the hearing was conducted in violation of R.C. 2152.58(D).

**{¶27}** R.C. 2152.53 sets forth the steps that are required when a question of competency is raised. In this case, the trial court determined there was a reasonable basis

for a competency evaluation and ordered that one be performed. This evaluation resulted in a finding of incompetency. Under R.C. 2152.59, once a minor is found incompetent but able to be restored to competency within a reasonable time, a plan for restoration services is to be initiated and the child monitored according to the further provisions within that statute. R.C. 2152.59(C) and (E). Here, the trial court ordered that appellant receive medications and supervision at the detention facility where he was being housed awaiting adjudication.

{¶28} These alleged errors are reviewed for plain error because no objection was lodged during the course of appellant's case. No argument was raised below regarding the authority of Dr. Neuhaus to examine appellant, the timeliness of his report, or the timeliness of the competency hearings.

{¶29} Appellant's citation to R.C. 2152.57 and 2152.58 are not the only statutes implicated here. Appellant does not recognize that the second competency hearing was governed by R.C. 2152.59. This statute directs the trial court to make a determination pursuant to R.C. 2152.53 after receiving a report indicating that competency has been restored. R.C. 2152.59(H)(1). It also allows the court to order a new competency evaluation, which was performed by Dr. Neuhaus, the same doctor who was earlier appointed by the court to evaluate appellant. *Id*. It also mandates that the court act within 15 business days of receiving a report outlined in R.C. 2152.59(F).

{¶30} After appellant was restored to competency, the evaluations indicated appellant had significant mental health issues, but that he was alert, aware of what was

going on around him, and able to assist counsel and participate in the proceedings. Even if the time constraints in R.C. 2152.57 and 2152.58 applied, there is no indication that the failure of the trial court to strictly abide by the temporal requirements set forth in the statute caused any prejudice to appellant. A further evaluation for adjudication purposes was also conducted and did not indicate a significant change in appellant's condition.

{¶31} In this case, just as in *In re T.L.*, 5th Dist. Licking No. 12-CA-81, 2013-Ohio-3356, it was not plain error when the trial court held a hearing after the 45-day period set forth in the statute. There was no objection raised or any instances of conduct that would indicate that appellant's mental state had changed. The same is true of the issuance of a written opinion 20 rather than 15 days after the hearing. Therefore, appellant's second assignment of error is overruled.

## C. Allocution

{¶32} Crim.R. 32(A) gives the condemned individual the right to speak prior to sentencing or the right to allocution. *State v. Green*, 90 Ohio St.3d 352, 738 N.E.2d 1208 (2000). "[I]t represents a defendant's last opportunity to plead his case or express remorse." *Id*. at 359-360. Although not governed by Crim.R. 32, a juvenile has a right to allocution similar to an adult. *Garfield Hts. v. J.P.*, 8th Dist. Cuyahoga No. 87166, 2006-Ohio-4590, ¶ 8.

{¶33} The Second District has recognized that

"an adjudicated delinquent has a right of allocution before disposition."
Even if it is unclear whether a statement from the juvenile would have an
effect, "at the very least, he should * * * be[] afforded the opportunity to be

> heard, including an expression of remorse in an effort to potentially mitigate his punishment."

*In re B.M.*, 2d Dist. Montgomery No. 25237, 2013-Ohio-1233, ¶ 7, quoting *In re K.S.J.*, 2d Dist. Montgomery No. 24387, 2011-Ohio-2064, ¶ 10. This would indicate that a failure to afford a right to allocution is reversible error regardless of whether the error caused harm. This can be contrasted with the holdings of the Ohio Supreme Court and other districts: "Thus, when a trial court imposes a sentence without first asking the defendant if he or she wishes to exercise their right of allocution, 'resentencing is required unless the error is invited error or harmless error.'" *In re R.D.G.*, 12th Dist. Butler No. CA2010-12-323, 2011-Ohio-6018, ¶ 19, quoting *State v. Campbell*, 90 Ohio St.3d 320, 326, 738 N.E.2d 1178 (2000).

**{¶34}** The state argues that any error is harmless. It essentially claims that no matter what appellant would have said, it would not have altered the sentence imposed by the trial court. However, it is clear from the record that the trial court considered appellant's silence when adjudicating this matter.

**{¶35}** The record indicates the trial court relied on appellant's lack of remorse during disposition. The court stated, "[a]nd then I've never even heard any words of remorse or contrition on [appellant's] part regarding his culpability in this. And that's what scares me." Those words of contrition the court was looking for normally come, if at all, at the sentencing or dispositional hearing after the defendant is given the opportunity to make a statement. The fact that appellant was not afforded that right, and

this was later used against him, indicates that the failure to afford appellant an opportunity to speak was not harmless error.

### III. Conclusion

**{¶36}** Appellant was found to be competent to stand trial by competent, credible evidence. Nothing in the record sufficiently contradicts that finding. Therefore, appellant was competent to stand trial, and the trial court's adjudication of appellant as a delinquent minor was not error. However, the trial court's failure to afford appellant an opportunity to speak prior to disposition requires reversal. On remand, appellant must be afforded the opportunity to speak prior to the trial court's disposition in this case.

**{¶37}** Finding of delinquency affirmed; cause reversed in part and remanded to the lower court for disposition consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Juvenile Court Division to carry this judgment into execution. The finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated. Case remanded to the trial court for disposition.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN A. GALLAGHER, J., CONCUR