[Cite as *In re T.D.S.*, 2022-Ohio-525.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE T.D.S.                                    :

A Minor Child                                   :

                                                            No. 110471

                                                :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 24, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL19110643

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Carson Strang and Ben McNair, Assistant
Prosecuting Attorneys, *for appellee.*

Timothy Young, Ohio Public Defender, Abigail
Christopher and Lauren Hammersmith, Assistant State
Public Defenders, *for appellant.*

SEAN C. GALLAGHER, A.J.:

{¶ 1} T.D.S. appeals the disposition ordered by the Cuyahoga County Court

of Common Pleas, Juvenile Division ("juvenile court"), after he was adjudicated

delinquent of conduct that constituted multiple felony counts arising from a

shooting death.  Upon review, we affirm the juvenile court's disposition that committed appellant to the Ohio Department of Youth Services ("ODYS").

{¶ 2}  In September 2019, Cleveland police officers responded to an emergency call for "shots fired" at an abandoned apartment building.  The caller told the emergency responders that two juveniles went inside the apartment building, gunshots were heard, and only one of the juveniles exited.  The juvenile was described as a black male having a high-top fade haircut, with a copper-color dye — a description consistent with T.D.S.  Upon entering the apartment building, officers found a 14-year-old victim with two gunshot wounds.  The victim was alive but unresponsive and succumbed to his injuries after a day in the hospital.

{¶ 3}   After receiving information from a local high school, T.D.S., then 15 years old, was identified as a person of interest.  A school employee told officers that T.D.S. had shot and killed the victim over a dispute involving a firearm, although it is unclear how the employee came upon that information.  Police officers initiated a discussion with T.D.S. and his mother at their home.  T.D.S.'s mother allowed the officers into the home to speak with T.D.S.  After about an hour, T.D.S. admitted to being present and shooting the victim, but he claimed the incident was an accident.  At that point, officers advised T.D.S. of his constitutional rights in his mother's presence.  After acknowledging his constitutional rights, T.D.S. told officers where the firearm used in the shooting was disposed of and led the officers to the location.  The firearm was never recovered despite an extensive search.

**{¶ 4}** The state theorized that T.D.S. was sent by an adult named "Vaughn" to retrieve the firearm used in the shooting from the victim. The victim had been threatened in the preceding weeks with "Vaughn's" intent to "send a little boy after" him. T.D.S., after being advised of his constitutional rights, confirmed this story. According to T.D.S., "Vaughn" contacted him in an attempt to have T.D.S. retrieve the firearm and he was offered $1,000 to kill the victim. The night before the killing, T.D.S. and the victim were together in the home of a mother figure for the victim. She overheard the conversation between "Vaughn" and the victim and told T.D.S. to leave. T.D.S. left with the victim the next morning, the day of the killing.

**{¶ 5}** Initially, T.D.S. was charged with purposely causing the death of the victim, offenses constituting murder under R.C. 2903.02(A), felony murder under R.C. 2903.02(B) with the predicate offense being either of two felonious assault charges under R.C. 2903.11(A)(1) or 2903.11(A)(2), tampering with evidence under R.C. 2921.12(A)(1), and having weapons while under disability under R.C. 2923.13(A)(2). The offenses included attendant firearm specifications. T.D.S. had a prior record; he was found delinquent of theft and attempted arson, which if committed by an adult would be an offense of violence. The trial court found probable cause to believe that T.D.S. committed acts constituting the offenses except for purposeful murder and having weapons while under disability. Following the denial of bindover, the grand jury issued a new indictment deleting the purposeful murder offense, but including the having weapons while under disability and serious youth offender specifications.

{¶ 6} Before trial, two experts presented differing opinions on T.D.S.'s competency to stand trial. Although T.D.S. indicated a low, full scale IQ of 60, both experts testified to his having a verbal IQ of 73. Throughout T.D.S.'s interaction with police officers and others during the course of the case, he demonstrated a basic understanding of the criminal justice system, for example comprehending and articulating the concepts of DNA and gunshot-residue evidence, which T.D.S. did not demonstrate during the competency evaluation.

{¶ 7} Based on that, both experts believed that T.D.S. was malingering to a certain extent, feigning incomprehension. In support of the state's malingering claim, a recording of a phone conversation between T.D.S. and another was played for the trial court. The audio recording demonstrated that T.D.S. had an understanding of the criminal process and, more to the point, the importance of plea negotiations in his case. In one of the conversations between T.D.S. and the expert, T.D.S. demonstrated a "good understanding" of T.D.S.'s prior experience with the juvenile criminal justice system, being able to discuss his theft adjudication when he was nine years old and the aggravated riot charge stemming from fights T.D.S. was involved in after entering the juvenile detention center.

{¶ 8} Neither expert opined to a reasonable degree of the requisite certainty that T.D.S. was incompetent to stand trial in absolute terms, but instead, one of the experts claimed that competency could be attained through the competency attainment program. In other words, the competency issue was not based on mental or medical issues, but focused on T.D.S.'s age and ability to comprehend the process

to ensure the proper interaction with his attorney. The other expert, however, could not opine to a reasonable degree of medical certainty that T.D.S. needed additional programs to attain competency. Instead, he merely gave deference to the other expert's conclusion but presumed T.D.S. was competent based on his evaluation and T.D.S.'s lack of cooperation with that process. Based on the competing evaluations, the juvenile court concluded that T.D.S. was competent to stand trial without undergoing the additional programs.

{¶ 9} Following the trial, the juvenile court found T.D.S. delinquent for acts that constituted felony murder, felonious assault, tampering with evidence, and having a weapon while under disability, along with attendant firearm specifications. Following the dispositional hearing, at which T.D.S. was committed to the custody of ODYS, the trial court imposed the adult sentences under the serious youth offender specifications that included a sentence of 15 years to life for the felony murder count, 8 to 12 years for the felonious assault counts, and 3 years for the tampering with evidence and having weapons while under disability counts. If the adult sentences were to be invoked, the juvenile court imposed those to be served concurrently.

{¶ 10} In the first assignment of error, T.D.S. claims the trial court abused its discretion by finding him competent to stand trial because the undisputed evidence demonstrated that his competency was contingent on participating in the competency attainment program. T.D.S.'s claim is not supported by the record.

{¶ 11} Competency determinations for juvenile delinquency cases are governed by R.C. 2152.51 to 2152.59. R.C. 2152.56(B) mandates that a competency assessment report shall address the child's capacity to (1) understand and appreciate the allegations against the child; (2) understand the adversarial nature of the proceedings, including the role of the trial participants; (3) assist in the child's own defense and communications with counsel; (4) comprehend and appreciate the consequences of the juvenile delinquency proceeding. *In re S.D.*, 8th Dist. Cuyahoga No. 99763, 2014-Ohio-2528, ¶ 13-14. After conducting a hearing on the matter, after the competency issue is properly brought to the juvenile court's attention, a written decision must be issued within 15 days based on the preponderance of the evidence standard. *In re A.H.*, 12th Dist. Brown No. CA2017-05-005, 2018-Ohio-364, ¶ 13, citing R.C. 2152.58(A).

{¶ 12} In this case, T.D.S.'s sole claim is that the trial court committed prejudicial error by finding him competent to stand trial despite what T.D.S. believes to be the undisputed evidence of both experts. As alluded to earlier, the experts disagreed as to the ultimate conclusion of whether T.D.S. required additional counseling to attain competency to stand trial. T.D.S.'s claim is, therefore, factually misplaced. At least one of the experts opined that T.D.S. was presumptively competent based on his evaluation, but the expert stated in the alternative and in deference to his colleague's opinion, that T.D.S.'s attendance in the competency attainment program would not be detrimental and would solidify T.D.S.'s understanding of the juvenile criminal justice system. The trial court did not err by

accepting one expert's opinion in consideration of the remaining evidence presented on the issue. In light of the fact that T.D.S.'s argument is based on a claim that is not supported by the record, the first assignment of error is overruled.

{¶ 13} In the second assignment of error, T.D.S. claims that the trial court erred in denying his motion to suppress any and all statements made following his being notified of his constitutional rights to an attorney and to remain silent. Although the officers began a consensual discussion with T.D.S. in the presence of his mother, T.D.S. made an incriminating statement after an approximately hour-long discussion, causing the interviewing officers to administer the constitutionally required advisements of T.D.S.'s rights. T.D.S. stated his understanding of his rights, and his mother was present at this point in the interview. Both T.D.S. and his mother were seated on the living room couch where the conversation took place. T.D.S. did not request an attorney and subsequently led police officers to a location where T.D.S. claimed to have disposed of the firearm that was used in the shooting.

{¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. With regard to factual determinations, "[a]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 16, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). "But the appellate court must decide the legal questions independently, without deference to the trial court's decision." *Id.*, citing *Burnside* at ¶ 8.

{¶ 15} It is well settled that juvenile suspects or offenders are entitled to protection against compulsory self-incrimination under the Fifth Amendment of the federal Constitution, and to *Miranda* warnings advising of the right to an attorney. *In re M.W.*, 8th Dist. Cuyahoga No. 94737, 2010-Ohio-6362, ¶ 20-21. "'Any statements made by a suspect may not be used in evidence where those statements were made during a custodial interrogation unless *Miranda* warnings were properly given to the suspect.'" *Id.*, quoting *In re [N.F.]*, 3d Dist. Auglaize No. 2-09-20, 2010-Ohio-2826, ¶ 27. Reviewing courts examine the totality of the circumstances surrounding the waiver in determining whether a juvenile has properly waived his *Miranda* rights. *Id.* These circumstances include, "'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *Id.*, quoting *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 57, and *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus. "A juvenile's access to advice from a parent, guardian or custodian also plays a role in assuring that the juvenile's waiver is knowing, intelligent, and voluntary." *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶ 24, citing *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 96; *but see In re Watson*, 47 Ohio St.3d 86, 89-90, 548 N.E.2d 210 (1989) ("We perceive no requirement in *Miranda* that the parents of a minor shall be read his constitutional rights along with their child, and

that, by extension, both parent and child are required to intelligently waive those rights before the minor makes a statement.").

{¶ 16} According to the transcript of the proceedings, T.D.S. moved to have his statements to police officers suppressed because the officers failed to provide the constitutional advisement at the start of the interview that occurred in T.D.S.'s home and in the presence of his mother. T.D.S. claims that his limited involvement with the juvenile justice system, having been adjudicated delinquent for a "low-level felony" when he was nine years old, and his diagnosis of borderline intellectual functioning with a full-scale IQ of 60 precluded him from intelligently waiving his constitutional rights upon receiving the advisement an hour into the initial interview. Further, T.D.S. claims that the police interview tactics were coercive and were known to elicit false confessions in children. The state claimed that the initial interaction with the police officers did not constitute a custodial interrogation, and therefore, the constitutional advisement was not required.

{¶ 17} The trial court, after the hearing, concluded that any statements T.D.S. made to officers before being advised of his constitutional rights were inadmissible, but that the remainder of T.D.S.'s admissions were admissible since he waived his right to remain silent and to have counsel present.

{¶ 18} In this appeal, T.D.S. claims the trial court erred as a matter of law by failing to suppress T.D.S.'s statements following the advisement. Although the state claims that the juvenile court erred by finding the initial interview to be a custodial interrogation, that issue was not timely or properly preserved. *In re M.M.*, 135 Ohio

St.3d 375, 2013-Ohio-1495, 987 N.E.2d 652, syllabus (state cannot appeal a suppression decision at the conclusion of trial). The sole issue is whether T.D.S.'s post-advisement statements are admissible.

{¶ 19} On this point, there is no factual dispute. T.D.S.'s claims focus on the application of the facts to the law. In support of his claim, T.D.S. cites *In re A.L.*, 2020-Ohio-4061, 157 N.E.3d 350, ¶ 20 (8th Dist.). In that case, the juvenile court denied a motion to suppress statements made following the police providing the child offender his constitutional advisements. The court concluded that the delinquent child was ten years old at the time of the crimes, but displayed a higher intellectual understanding because he did not demonstrate any difficulty understanding or answering police questions. *Id.* at ¶ 11. Further, although the child had no prior involvement in the criminal justice system, the trial court noted that the interview preceding the constitutional advisements, conducted in a calm and monotone demeanor for the first half of the interview, lasted almost two hours. *Id.* at ¶ 12. The panel disagreed with the trial court's factual conclusions, finding that the juvenile will was "overborne by the police interrogation he was subjected to without adult consultation at the age of ten." *Id.* at ¶ 20. Accordingly, the panel concluded that the juvenile's confession was involuntary and obtained in violation of his constitutional rights, a conclusion that was also applied to what was deemed an ineffective *Miranda* advisement. *Id.* at ¶ 22, 38.

{¶ 20} *In re A.L.* is factually inapposite. T.D.S.'s mother was present during the entire interview, including the advisement that was given while T.D.S. and his

mother sat next to each other on the living room couch. T.D.S. was 15 years old and had experience with the criminal justice system. Although his full-scale IQ was borderline, both experts placed his verbal acumen in a higher category, supporting the notion that T.D.S. may have been malingering to some degree. *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 27 (diminished cognitive abilities do not mean any statements are involuntary, especially where appellant did not have much difficulty understanding the officer's questions). The interviewing police officer believed T.D.S. to be savvy enough to question the statements about the alleged evidence that were being made in the interview, demonstrating a basic understanding of the criminal justice process.[1] *In re M.W.*, 8th Dist. Cuyahoga No. 94737, 2010-Ohio-6362, at ¶ 22. And further, the police officers' questioning did not constitute coercive tactics. *In re M.J.C.*, 12th Dist. Butler No. CA2014-05-124, 2015-Ohio-820, ¶ 18, citing *N.J.M.* at ¶ 20. ("Coercive law enforcement tactics include, but are not limited to, physical abuse, threats, deprivation of food, medical treatment or sleep, use of certain psychological techniques, exertion of improper influences or direct or implied promises, and deceit.") Accordingly, we cannot

---

[1] In this appeal, and again repeated during oral argument, T.D.S. claims that officers lied to him during his interview regarding an eyewitness identification, DNA evidence, and gunshot-residue testing. None of those claims were addressed during the suppression hearing, and T.D.S. has not specifically identified any of the challenged statements. App.R. 16(A)(7). From the transcript of the suppression hearing, however, when confronted with the evidence, T.D.S.'s response was more sophisticated than anticipated by the officers, with T.D.S. challenging the officers' statements. Even if the officers' statements could be construed as deceitful, T.D.S. demonstrated an ability to challenge the officers so that any alleged deceit cannot be considered under the totality of the circumstances as infringing on his constitutional rights. *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 196.

conclude that the trial court erred in denying the motion to suppress and the second assignment of error is overruled.

{¶ 21} In the third assignment of error, T.D.S. claims his convictions for purposeful murder in violation of R.C. 2903.02(A) and tampering with evidence were against the weight of the evidence because there was no evidence that T.D.S. purposefully murdered the victim and the police were unable to recover the firearm for the purposes of the tampering with evidence charge. The purposeful murder charge was deleted from the superseding indictment. T.D.S. was convicted of felony murder under R.C. 2903.02(B), a strict liability offense. *State v. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 10, citing *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 43 ("R.C. 2903.02(B), the felony-murder statute, does not contain a mens rea component"). In light of that fact, we will limit the discussion to T.D.S.'s claim with respect to the tampering with evidence charge.

{¶ 22} When reviewing a claim challenging the weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). When a court of appeals concludes that a verdict is against the weight of the evidence, "the appellate court sits as the 'thirteenth juror' and disagrees with the

factfinder's resolution of the conflicting testimony." *Id.* "[A]n appellate court's disagreement with the [finder of fact's] weighing of the evidence does not require the special deference accorded verdicts of acquittal." *Id.* at 388. A judgment of conviction should be reversed as against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* at 387, citing *Martin* at 175. This is not that exceptional case based on the arguments presented. App.R. 16(A)(7).

{¶ 23} T.D.S. claims that because the police officers were unable to locate the firearm, he could not be convicted of tampering with evidence as defined under R.C. 2921.12(A)(1), which provides that "no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." We find no merit to T.D.S.'s claim.

{¶ 24} T.D.S. was convicted of felonious assault and having a weapon while under disability for his conduct in shooting the victim with the firearm that T.D.S. concealed following the shooting. T.D.S. admitted to the officers that he disposed of the weapon after the shooting. The fact that the weapon was purposefully concealed and never recovered only bolsters the conviction. *State v. Shirley*, 8th Dist. Cuyahoga No. 107449, 2019-Ohio-1888, ¶ 25-26 (hiding a firearm after committing a crime constitutes the crime of tampering with evidence); *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 29. Regardless, this is not the

exceptional case warranting appellate intervention under the standard of review T.D.S. invoked.

{¶ 25} And finally, in the fourth assignment of error, T.D.S. claims he was denied effective assistance of counsel for the failure to file a motion to dismiss the purposeful murder and having weapons while under disability charges advanced in the original indictment after the juvenile court found no probable cause that he committed acts constituting those offenses.

{¶ 26} "[A]ppellate courts generally review ineffective assistance of counsel claims on a de novo basis * * *." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 53. In order to prevail on an ineffective assistance of counsel claim, the defendant must show that his trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 49. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689. To establish prejudice, the defendant must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 27} We need not dwell on this issue. T.D.S. cannot demonstrate prejudice in this case because the original indictment impacted by the probable-cause determination was not the source of the charges for which T.D.S. stood trial. The

state issued a superseding indictment after the probable-cause hearing, mooting any issues with respect to the allegations advanced in the original indictment. T.D.S. has not addressed the procedural posture of this case, so regardless of what would have occurred following the probable-cause hearing, we must review the superseding indictment as the source of the operative allegations. In light of the juvenile court's finding T.D.S. delinquent on the weapon while under disability charge advanced in the superseding indictment, in part based on T.D.S.'s concession to having a prior qualifying offense, we are unable to conclude that any prejudice could arise from T.D.S.'s claimed error. The fourth assignment of error is overruled.

{¶ 28} Based on the foregoing, we affirm.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. The finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated. Case remanded to the trial court for execution of commitment.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., CONCURS;
EILEEN T. GALLAGHER, J., CONCURS IN JUDGMENT ONLY