[Cite as *In re D.C.*, 2025-Ohio-5147.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE D.C.

A Minor Child

Nos. 115133 and 115139

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** November 13, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL23114106 and DL24101837

***Appearances:***

Cullen Sweeney, Cuyahoga County Public Defender, and
Britta Barthol, Assistant Public Defender, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Tyler W. Blair and Michael R. Wajda,
Assistant Prosecuting Attorneys, *for appellee.*

DEENA R. CALABRESE, J.:

{¶ 1} Appellant D.C. appeals the disposition of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), ordering his commitment to an Ohio Department of Youth Services ("ODYS") juvenile detention facility for a minimum of one year. Appellant argues that the juvenile court abused its discretion in ordering confinement rather than a less severe alternative. He further argues that he was denied his right to allocution before disposition. We find merit to appellant's

allocution argument. Accordingly, we vacate the juvenile court's disposition and remand the matter so appellant may be afforded the opportunity to be heard prior to disposition.

## I. Facts and Procedural History

### A. Charges Pertaining to Jane Does 1 and 2

{¶ 2} On December 19, 2023, the Cuyahoga County Prosecutor's Office charged appellant with multiple offenses, that if committed by an adult would be felonies, relating to sexual misconduct involving two different child victims. The charges stemmed from events occurring when appellant was 14 and 15 years old. The first three counts related to Jane Doe 1, a victim who was 12 years of age at the time the incident occurred in November 2020:

> Count 1: Rape in violation of R.C. 2907.02(A)(2) (victim compelled to submit by force or threat of force), a felony of the first degree;
>
> Count 2: Rape in violation of R.C. 2907.02(A)(1)(b) (victim less than thirteen years of age), a first-degree felony; and
>
> Count 3: Abduction in violation of R.C. 2905.02(B) (restraint with sexual motivation), a felony of the third degree.

{¶ 3} The remaining four counts related to Jane Doe 2, a victim who was 15 years of age at the time of the incidents referenced in the charges, which were alleged to have occurred in November 2020 and February 2021:

> Count 4: Rape in violation of R.C. 2907.02(A)(2) (victim compelled to submit by force or threat of force), a felony of the first degree;
>
> Count 5: Abduction in violation of R.C. 2905.02(B) (restraint with sexual motivation), a felony of the third degree;

Count 6: Gross sexual imposition in violation of R.C. 2907.05(A)(1) (victim compelled to submit by force or threat of force), a felony of the fourth degree; and

Count 7: Abduction in violation of R.C. 2905.02(B) (restraint with sexual motivation), a felony of the third degree.

**B. Charges Pertaining to Jane Doe 3**

{¶ 4} On February 22, 2024, the Cuyahoga County Prosecutor's Office charged appellant with additional felonies related to sexual misconduct involving a third child victim. That victim was 14 years of age at the time of the incident in June 2023. The charges consisted of two counts:

Count 1: Rape in violation of R.C. 2907.02(A)(2) (victim compelled to submit by force or threat of force), a felony of the first degree; and

Count 2: Rape in violation of R.C. 2907.02(A)(1)(c) (substantial-impairment rape), a felony of the first degree.

**C. Adjudicatory Hearing**

{¶ 5} The juvenile court held a hearing on November 13, 2024, to enter an agreed adjudication on the record. Pursuant to a plea agreement negotiated in advance of the adjudicatory hearing, certain charges were amended and other charges were nolled. Specifically, with respect to the first set of charges stemming from incidents occurring in 2020 and 2021, Count 2 was amended to gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. Counts 1, 3-5, and 7 were then nolled on the condition that appellant admit to Count 2 as amended and Count 6 as written (gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree).

**{¶ 6}** With respect to the second set of charges, which concerned an incident in 2023, Count 1 was amended to gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree. The State agreed to nolle Count 2 on the condition that appellant admit to Count 1 as amended.

**{¶ 7}** Following an extensive colloquy regarding, inter alia, the rights appellant would be waiving by admitting to the amended charges, the juvenile court indicated that it was "ready for [its] allocution" and took a recess. (Nov. 13, 2024 tr. 19.) Upon resuming, the trial court immediately addressed the prosecutor:

> THE COURT: [A]s I have another proceeding to attend to trial for this, [prosecutor], with regard the case ending in 837, what was the State of Ohio prepared to show?

(Nov. 13, 2024 tr. 19.) Defense counsel immediately interrupted and engaged in the following exchange with the juvenile court:

> [DEFENSE COUNSEL]: Your Honor, I believe my client is prepared to allocute, but I certainly understand that the Court had just called upon the State, so I would ask the Court for that permission at this time.
>
> THE COURT: I will hear an allocution. I realize that at times, children do not understand that that is also part of the process, even though it is part of the explanation. And finding the words at times can be challenging for all parties involved. But since time is of the essence and this matter will be adjudicated, and should he be adjudicated delinquent, will be referred for assessment. What [D.C.] needs to understand is there will be the same question that will be posed by the assessor. [Prosecutor], I'll hear your proffer.

(Nov. 13, 2024 tr. 19-20.)

**{¶ 8}** The State then proffered the basis for the charges on the record. As to Jane Doe 3, the State alleged penile penetration of Jane Doe 3's vagina while she was unconscious and unable to consent. The juvenile court asked appellant

whether, understanding that this was what the State intended to show at trial, he still wished to admit to the amended charge. He confirmed that he did. (Nov. 13, 2024 tr. 20-21.) With respect to Jane Doe 1, the State indicated it was prepared to prove that appellant forcefully engaged in fellatio with the 12-year-old victim. With respect to Jane Doe 2, the State indicated it was prepared to prove that appellant went into a high school girls' bathroom and touched Jane Doe 2 "all over her body, including her private areas, her breasts and her vagina against her will." (Nov. 13, 2024 tr. 24.) The juvenile court again asked appellant to confirm he still intended to admit to the amended charge, "understanding that that's what the State was prepared to show." (Nov. 13, 2024 tr. 24-25.) Appellant replied, "Yes, Your Honor." (Nov. 13, 2024 tr. 25.)

{¶ 9} The juvenile court found appellant "delinquent as to all admitted counts," continued the case for disposition, and referred appellant for a probation department investigation and juvenile sex offender assessment. (Nov. 13, 2024 tr. 25.)

**D. Dispositional Hearing**

{¶ 10} The juvenile court held a dispositional hearing on April 24, 2025. It first heard a written statement from the victim of the 2023 assault, Jane Doe 3, read aloud by a victim advocate. She described being at the end of her freshman year when the assault occurred. In addition to the confusion and pain she felt in the immediate aftermath of the incident and over the summer, she feared returning to school in the fall despite weekly therapy, writing that she "thought the task of going

back to school would be manageable, but it wasn't." (Apr. 24, 2025 tr. 6.) She instead attended school online because she feared seeing appellant. She felt both "hopeless and helpless" and wrote that she did not "think any punishment for [appellant] will ever amount to the emotional trauma and stress he put [her] through." (Apr. 24, 2025 tr. 7.)

{¶ 11} Jane Doe 3's mother, who was present at the dispositional hearing, then addressed the juvenile court. She told the court that for months she was afraid that she would come home to find her daughter dead by suicide. "She lost her joy. She lost her laugh. . . . [N]o mother and no child should ever have to endure this type of pain and suffering at the hand of a sexual predator in their school community." (Apr. 24, 2025 tr. 8.) The victim's mother stated that her "daughter's virginity and dignity and childhood were stolen from her at 14." (Apr. 24, 2025 tr. 8.)

{¶ 12} Next to address the juvenile court was the mother of Jane Doe 2, who described her daughter as having "attended the last hearing and unfortunately had some anxiety about coming back today." (Apr. 24, 2025 tr. 9.) She read a statement from her daughter, who indicated she would "not forget what [appellant] did to [her]," that she "still struggle[s]," and that her life would "never be the same." (Apr. 24, 2025 tr. 9-10.) She described telling appellant "no," but that "it didn't get into his head." (Apr. 24, 2025 tr. 9.) The victim's mother indicated that Jane Doe 2 had chosen to finish school online because of the assault. "She missed her prom, she missed her graduation, and all the other experiences that she should have had during her time in high school." (Apr. 24, 2025 tr. 10.) She ceased school activities

and would hide in the school bathroom.  She underwent mental-health treatment, but also once went to an emergency room on her own, apparently because of suicidal ideations.  (Apr. 24, 2025 tr. 10-11.)

{¶ 13} The court next heard from the probation officer who prepared a report and recommendation.  She acknowledged that it was going to be "very difficult to give the report . . . after hearing what the victim[s] had to say because it's literally night and day."  (Apr. 24, 2025 tr. 11-12.)  Pressed by the juvenile court on what she meant by "night and day," the probation officer described appellant's gainful employment and stable, supportive family life.  She explained that "the report is nothing but good things[,] . . . [b]ut then we have the victims here that paint a whole different side of him."  (Apr. 24, 2025 tr. 12.)  When asked about her review of the sexual offender assessment, the probation officer indicated she had issues because appellant still "denies the offenses."  (Apr. 24, 2025 tr. 13.)  She therefore questioned whether appellant was actually taking responsibility for his actions.  Asked by the juvenile court for her recommendation, the probation officer stated:

> We do know that he's 19, I believe.  So there's really, in the juvenile system, what do we do?  I do think a referral to the PROTECT program with OhioGuidestone should be available to him and completing that program.
>
> Anything else, maybe out of the scope of probation, and we'll defer to the Court for that, Your Honor.

(Apr. 24, 2025 tr. 14.)

**{¶ 14}** The State then addressed the court, noting the severity of the offenses and the victim-impact statements. It also specifically highlighted appellant's purported refusal to take responsibility for his actions:

> There's — if he's not gonna take accountability for these, he's not learning anything. And we understand that the point of Juvenile Court a lot is rehabilitation, but you cannot be rehabilitated for things you refuse to be — take accountability for.
>
> He still, according to the report, has no understanding of consent, which is the foundation of any sexual relationship we have. How can he be trusted in the community if he does not understand consent? He — it was also noted that his claim to have no sexual thoughts may be a denial of what's happening.

(Apr. 24, 2025 tr. 15-16.) The State therefore urged that appellant be sentenced to a term at ODYS.

**{¶ 15}** Appellant's counsel spoke on his behalf. He did not minimize the offenses but did attempt to dilute the perception that appellant did not accept responsibility, arguing that it stemmed from his client's "confusion" with respect to distinctions between offenses:

> And I believe the confusion is, *and he'll explain, Your Honor*, as far as what happened there, he was — has always been adamant that he did not rape.
>
> . . .
>
> And that's what the confusion is when he goes and talks with a lot of individuals that — necessary for the assessments, is he's still thinking of that charge. But he understands that he put himself in a situation, especially when someone is extremely intoxicated and doesn't remember anything, and himself in there, that he did the acts that he pled to.
>
> And in those acts, he's taken full — or wants to take full responsibility.

(Emphasis added.) (Apr. 24, 2025 tr. 17-18.) Appellant's counsel emphasized appellant's employment, his involvement with his church, and the lack of other charges. He urged the court to impose a sanction focused on rehabilitation rather than punishment.

{¶ 16} After appellant's counsel concluded, the court asked appellant himself only a single question:

> THE COURT: [D.C.], for the three separate occasions, how many times was alcohol involved?
>
> [D.C.]: One, Your Honor.

(Apr. 24, 2025 tr. 21.)

{¶ 17} The juvenile court then immediately proceeded to its final remarks and disposition. It pointedly referred to appellant as neither "delinquent" nor a "youth" or "child," but rather as "an offender." (Apr. 24, 2025 tr. 22.) It stated that this was "not the first time" that the juvenile court had "dealt with an offender . . . who denied what happened, and yet at the same time admitted what happened." (Apr. 24, 2025 tr. 22.) It remarked that there were "too many circumstances" and "too many victims." (Apr. 24, 2025 tr. 22.)

{¶ 18} With respect to Cuyahoga J.C. No. DL23114106, as to Count 2, the juvenile court committed appellant to the ODYS for a minimum of six months, not to exceed his 21st birthday. With respect to Count 6 in that case, it likewise committed appellant to the ODYS for a minimum of six months, not to exceed his 21st birthday. Counts 2 and 6 in DL23114106 were to run concurrently.

{¶ 19} With respect to Cuyahoga J.C. No. DL24101837, as to Count 1, the juvenile court committed appellant to the ODYS for a minimum of six months, not to exceed his 21st birthday. The commitments to the ODYS in DL23114106 and DL24101837 were ordered to be served consecutively, resulting in a minimum term of one year. The juvenile court also ordered appellant to participate in juvenile sex offender therapy. It concluded the proceeding:

> [THE COURT:] On that note, Court costs are assessed. Warrant to convey is issued. Deputy, you may take him away. Good luck to you. We're off the record.

(Apr. 24, 2025 tr. 24.)

{¶ 20} In a subsequent journal entry, the juvenile court stated that it had reviewed both the probation report and the juvenile sex offender assessment in reaching its conclusions on disposition.

## II. Assignments of Error

{¶ 21} Appellant raises two assignment of errors for our review:

Assignment of Error I:

The trial court abused its discretion in determining that a commitment to the Ohio Department of Youth Services was the appropriate disposition for D.C.

Assignment of Error II:

The juvenile court erred when it violated D.C.'s right of allocution by not giving him an opportunity to speak on his own behalf prior to committing him to the Ohio Department of Youth Services.

{¶ 22} We address appellant's assignments of error out of order and find that his second assignment of error has merit. Because the remedy in this circumstance

is to vacate the juvenile court's order of disposition and remand for a new dispositional hearing, the resolution of appellant's second assignment of error renders his first assignment of error moot.

## III. Analysis

### A. Assignment of Error II

{¶ 23} Crim.R. 32(A) provides that before imposing sentence in a criminal trial, the trial court shall "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." "The Ohio Supreme Court has held that the provisions of Crim.R. 32(A) are mandatory in both capital and noncapital cases, absent invited error or harmless error." *Garfield Hts. v. J.P.*, 2006-Ohio-4590, ¶ 6 (8th Dist.), citing *State v. Campbell*, 90 Ohio St.3d 320 (2000), paragraph two of the syllabus.

{¶ 24} "Although not governed by Crim.R. 32, a juvenile has a right to allocution similar to an adult." *In re S.D.*, 2014-Ohio-2528, ¶ 32 (8th Dist.), citing *J.P.* at ¶ 8. *See also In re R.D.G.*, 2011-Ohio-6018, ¶ 18 (12th Dist.). In the absence of invited error or harmless error, a trial court's imposition of a sentence without first asking the defendant if they wish to exercise their right to allocution requires resentencing. *In re S.D.* at ¶ 33.

{¶ 25} The State argues that any error was harmless. First, it contends that appellant had the opportunity to allocute at his adjudicatory hearing but failed to do so. The transcript, however, flatly contradicts the State's argument that the juvenile court "requested Appellant to allocate [sic] as to the offenses, but Appellant declined

to speak." (State's brief at p. 2.) Following a colloquy with appellant regarding his constitutional rights, the juvenile court asked the prosecutor for a proffer. Defense counsel actually interrupted the court, apparently seeking an opportunity for appellant to allocute even though the case had not reached the point of dispositional proceedings. The juvenile court did not entertain that request, indicating that "time is of the essence," that appellant would be "referred for assessment," and that "the same question . . . will be posed by the assessor." (Tr. 20.) It then told the prosecutor: "[Prosecutor], I'll hear your proffer." While the juvenile court subsequently confirmed with appellant that he still wished to admit responsibility with respect to the remaining and amended charges after hearing the State's proffer, it did not solicit an allocution pertaining to mitigation at the adjudicatory hearing.

{¶ 26} Moreover, at the conclusion of the adjudicatory hearing, the case was continued for disposition. Allocution, in this context, "represents a defendant's *last opportunity* to plead his case or express remorse." (Emphasis added.) *J.P.*, 2006-Ohio-4590, at ¶ 7 (8th Dist.). That "last opportunity" was the dispositional hearing held several months later, not the adjudicatory hearing.

{¶ 27} Second, the State argues, as it did in *In re S.D.*, 2014-Ohio-2528 (8th Dist.), that allocution could not possibly have changed the outcome of the dispositional hearing. As this court wrote in *In re S.D.*, the State essentially contends that the denial of allocution was harmless because "no matter what appellant would have said, it would not have altered the sentence imposed by the trial court." *Id.* at ¶ 34.

{¶ 28} The *In re S.D.* Court rejected that argument because it was "clear from the record that the trial court considered appellant's silence when adjudicating this matter." *Id.* More specifically — and such specificity is critical when comparing *In re S.D.* to the present case — "the trial court relied on appellant's lack of remorse during disposition," remarking that it had not heard "any words of remorse or contrition." *Id.* at ¶ 35. This court, rejecting the State's arguments, wrote:

> Those words of contrition the court was looking for normally come, if at all, at the sentencing or dispositional hearing after the defendant is given the opportunity to make a statement. The fact that appellant was not afforded that right, and this was later used against him, indicates that the failure to afford appellant an opportunity to speak was not harmless error.

*Id.*

{¶ 29} The State attempts to distinguish *In re S.D.* from the present case, where the record does not specifically indicate that the juvenile court considered appellant's silence or, more precisely, the lack of "words of contrition," in its disposition. Appellant's purported refusal to accept responsibility for his actions, however, was a consistent theme throughout the dispositional hearing. For example, even though the probation officer initially recommended outpatient treatment, she noted that according to Dr. Monford — who conducted the juvenile sex offender assessment — appellant still "denies the offenses," which "would mean he's not taken responsibility for any of this." (Apr. 24, 2025 tr. 13.) The juvenile court followed up by asking the probation officer whether, "as a result of the services that [Dr. Monford] had been contracted and rendered in the report, for this Court,

have you ever known or learned that she misrepresented something?" (Apr. 24, 2025 tr. 14.) The probation officer responded in the negative.[1] The State's closing remarks in support of commitment to ODYS likewise relied heavily on appellant's purported lack of remorse, arguing that one "cannot be rehabilitated for things you refuse to . . . take accountability for." (Apr. 24, 2025 tr. 15.)

{¶ 30} While appellant's counsel spoke on his behalf, his remarks suggested that he expected the juvenile court to permit allocution. Referring to his client, counsel indicated that "he'll explain, Your Honor," that he "wants to take full responsibility." (Apr. 24, 2025 tr. 17-18.) Appellant had just heard extremely moving victim-impact statements recounting lives devastated by his actions. The juvenile court nevertheless gave appellant no opportunity to address the court, personally and directly, to express remorse for his actions or to respond to the overarching theme that he did not accept responsibility. The juvenile court's remarks before announcing its disposition were more terse than in *In re S.D.*, 2014-Ohio-2528 (8th Dist.), but they included the statement this was "not the first time" that the court had "dealt with an offender . . . who denied what happened, and yet at the same time admitted what happened." (Apr. 24, 2025 tr. 22.)

{¶ 31} The juvenile court erroneously deprived appellant of his "last opportunity to plead his case or express remorse." *J.P.*, 2006-Ohio-4590, at ¶ 6 (8th Dist.). In light of the heavy emphasis during the dispositional hearing on appellant's

---

[1] As noted previously, the juvenile court's dispositional journal entry indicated that the court had reviewed both the probation report and the juvenile sex offender assessment in reaching its conclusions on disposition.

purported lack of remorse and the juvenile court's explicit reference to his continued denials, we cannot find that the error was harmless. The juvenile court's failure to afford appellant an opportunity to speak on his own behalf prior to disposition requires reversal. On remand, the juvenile court must advise appellant of his right to allocution and afford appellant the opportunity to speak prior to disposition.

## B. Assignment of Error I

{¶ 32} Because our resolution of appellant's second assignment of error requires a remand for a new dispositional hearing, his first assignment of error is moot. *See J.P.* at ¶ 10; *State v. Morris*, 2016-Ohio-7614, ¶ 23, fn. 2 (8th Dist.); *Middleburg Hts. v. Sefcik*, 2005-Ohio-4575, ¶ 7 (8th Dist.).

{¶ 33} Appellant's disposition in the juvenile court is vacated. The matter is remanded to the juvenile court for a dispositional hearing wherein appellant is afforded the right of allocution.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR