[Cite as *State v. Noble*, 2026-Ohio-1921.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
### TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-T-0062 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ASHLEE D. NOBLE, | |
| Defendant-Appellant. | Trial Court No. 2024 CR 00929 |

## OPINION AND JUDGMENT ENTRY

Decided: May 26, 2026
Judgment: Reversed and remanded

*Dennis Watkins*, Trumbull County Prosecutor, and *Charles L. Morrow*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Richard E. Hackerd*, 55 Public Square, Suite 2100, Cleveland, OH 44113 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1}   Appellant, Ashlee D. Noble, appeals the judgment of the Trumbull County Court of Common Pleas sentencing her to an aggregate prison term of two to three years following her guilty pleas to Burglary and Felonious Assault.

{¶2}   Appellant raises a single assignment of error, arguing that the trial court violated her right of allocution.  Having reviewed the record and the applicable law, we find that Appellant's assignment of error has merit.  The trial court violated Appellant's right of allocution by consistently interrupting her and precluding her from personally reading her written statement.  The error was not harmless because of the emphasis the

trial court placed on Appellant's purported lack of genuine remorse and failure to accept responsibility and because the court weighed those factors against Appellant in imposing her sentences. Therefore, we reverse the judgment of the Trumbull County Court of Common Pleas and remand this matter for resentencing.

**Substantive and Procedural History**

{¶3} On February 5, 2025, the Trumbull County Grand Jury indicted Appellant for Aggravated Burglary, a first-degree felony in violation of R.C. 2911.11(A)(1) and (B) (Count 1), and Felonious Assault, a second-degree felony in violation of R.C. 2903.11(A)(1) and (D)(1)(a) (Count 2).

{¶4} On February 13, 2025, Appellant was arraigned and pleaded not guilty. The next day, on February 14, 2025, the public defender's office filed a notice of appearance as Appellant's defense counsel.

{¶5} On July 8, 2025, the parties entered into a written plea agreement in which Appellant agreed to plead guilty to amended Count 1, Burglary, a second-degree felony in violation of R.C. 2911.12(A)(2) and (D), and Count 2, Felonious Assault, as originally charged.

{¶6} On the same date, the trial court held a plea hearing and engaged in a colloquy with Appellant pursuant to Crim.R. 11. Following the colloquy, Appellant entered guilty pleas to amended Count 1 and Count 2. As a factual basis, the State presented the following:

> [O]n or about the date referenced in the indictment [November 25, 2024], in Trumbull County, State of Ohio, this Defendant did, by force, enter [a specific address] in Niles, Ohio. That address is the permanent residence of a [K.G.]. Once inside, the Defendant, in the company of the co-defendant, Michael Noble, did inflict serious physical harm to [K.G.]. To

prove these allegations the State would have brought forth the testimony of the arresting officers and the victim in this case.

{¶7}    The trial court accepted Appellant's guilty pleas and found her guilty. The court ordered a presentence investigation ("PSI") and informed Appellant, "It's very important you cooperate with the probation department because whether you – how long you go to prison is going to depend on what comes back in that report." The trial court revoked Appellant's bond and ordered Appellant to be taken into custody.

{¶8}    Defense counsel asked to be heard on the bond issue and stated that although there was a presumption of prison for Appellant's offenses, it was not mandatory. In addition, Appellant had no record; she had been on pretrial release with no issues; and she would be assessed by the Women's Therapeutic Docket. The trial court responded, "It's not going to happen. There's no chance of her going to the Women's Therapeutic Docket." The trial court reiterated that Appellant's bond was revoked and ordered that she be taken into custody.

{¶9}    On August 21, 2025, the trial court held a sentencing hearing. Defense counsel spoke on Appellant's behalf. She provided the following information:

(1)    Appellant was 36 years old and had one prior conviction at age 21 for Contributing to Unruliness or Delinquency of a Child. At that time, Appellant had two young children.

(2)    Appellant is a low to moderate risk to re-offend and has been accepted by the NEOCAP Program.

(3)    Appellant does not use illegal drugs or abuse alcohol; she has her GED and has worked as an STNA; and she dropped out of high school when she became pregnant at age 15.

Case No. 2025-T-0062

(4)     Appellant was abandoned by her mother as a young child and was raised by her grandparents, who were both alcoholics.

(5)     At age 13, Appellant was raped by her boyfriend's brother while her boyfriend watched.  The charge was reduced to a misdemeanor offense of Contributing to Unruliness or Delinquency of a Child.

(6)     Over 11 years, Appellant repeatedly called to report domestic abuse that the father of her children committed.  Appellant's next relationship with her husband was also abusive.

(7)     Appellant's counselor reported that Appellant was diagnosed with ADHD, Generalized Anxiety Disorder, and Borderline Personality Disorder.

(8)     The daughter of one of Appellant's past clients wrote a letter praising Appellant's compassion, empathy, and good character.

{¶10}  Defense counsel requested that Appellant be sentenced to a community control sanction, emphasizing Appellant's lack of criminal record, her many years as a law-abiding citizen, the above mitigating factors, and her low risk of recidivism.  After finishing her remarks, defense counsel stated, "I do believe that [Appellant] has also written something, Your Honor, that she would like to read, too."

{¶11}  Before Appellant could begin reading her statement, the trial court asked her why she did not provide a statement to the Adult Probation Department during her PSI.  Appellant responded that she was not "ready" and did not know "exactly what [she] wanted to say" other than "that [she] was sorry.  The trial court instructed Appellant to explain what she did that "landed" her there for "two serious crimes of Felonious Assault and Burglary."  The following exchange occurred:

Case No. 2025-T-0062

THE DEFENDANT: I was with some people, they went into the house --

THE COURT: No, no, let's back that up. You were the ringleader for the whole thing. You made some stupid TikTok videos with the victim, did you not?

THE DEFENDANT: Yes. When I originally went there I was going there to talk –

THE COURT: And you were mad because he wouldn't give you the videos or some stupid reason.

THE DEFENDANT: No.

THE COURT: You got your son and three other people to go break his door down and go in and assault him?

THE DEFENDANT: That was not what was supposed to happen, sir.

THE COURT: Okay. So that didn't happen?

THE DEFENDANT: It was not supposed to --

THE COURT: Who drove the people there? Who drove them?

THE DEFENDANT: I drove myself . They drove themselves.

THE COURT: And who rounded everybody up to go kick his door down and beat him up?

THE DEFENDANT: It was not like that, Your Honor.

THE COURT: Who was the person responsible to get them to go beat him up?

THE DEFENDANT: I was responsible. My words.

THE COURT: That's why the probation department says you don't accept responsibility for what you do and you minimize your actions. Go ahead. If you want to read your statement, go ahead.

{¶12}   Appellant began reading: "Your Honor, I want to begin by apologizing to the

Court, my family --." At that point, the following exchange occurred:

THE COURT: Don't apologize to me. Who should you be apologizing to?

THE DEFENDANT: And most importantly, the victim.

THE COURT: Who is the victim?

THE DEFENDANT: [K.G.]

THE COURT: And why did you assault him?

THE DEFENDANT: I did not – it was not supposed to happen like that.

THE COURT: Are you going to stand there and tell me you did not assault the victim?

THE DEFENDANT: I did not.

THE COURT: All right. Go ahead, finish your statement.

{¶13} Appellant continued reading:

-- and his family, for my part in the actions that took place late November of 2024. I allowed my emotions and my mental health to take over the situation. I can now clearly, through the direction of Dr. Dan from Compass in Youngstown who has assisted me with the regulation in my medication and seeking counseling, the actions that I took was extremely inappropriate and was harmful not only to [K.G.] but his family and their sense of security and well being. My time here has also taught me that my actions do affect my own family and their ability to look at me as someone that has done nothing but put their best foot forward for --

{¶14} At that point, the trial court interjected, "You're going to have to slow down and speak real loud so we can hear you, because I can't understand a word you're saying. Appellant responded, "I'm sorry." The trial court replied, "Why don't you let your attorney read that for you, because if all you're going to do is read it, she can read it." Appellant complied, and defense counsel read the remainder of Appellant's statement into the record:

My time here has also taught me that my actions do affect my own family and their ability to look at me as someone that has done nothing but put them -- put my best foot forward for society, working as an aide many years, to the beginning of my career in healthcare.

Case No. 2025-T-0062

The consequence of my actions weigh heavy on me daily, and having no ability to further correct any of my mistakes weighs even more. I wish I could rectify the circumstances that have led to my current situation, but I am unable to alter past events.

As of today, I have spent over 44 days in the Trumbull County Jail, an experience that has profoundly underscored to never return to such a place. It has taught me the true consequences are to my actions and has impacted me in a way in which I can say I will never engage in actions that could result in breaking the law and returning. It has not only taught me consequences, but is affecting my current mental state by depression, leading to extended periods of sleep, often between 16 to 20 hours daily.

I implore for you, Your Honor, to consider my release on probation or through community service. I believe community service would provide a valuable opportunity for me to atone for my past actions. I humbly request a second chance, Your Honor. I believe most individuals are deserving of such an opportunity. At nearly 37 years of age, this marks my first encounter with legal trouble. I sincerely hope that you will recognize my worthiness of this chance. Thank you for your time in considering all relevant facts in this matter.

{¶15} After defense counsel finished reading Appellant's statement, the following exchange occurred:

THE COURT: Well, it's not your first time in trouble. You took your own son with you -- your son is facing criminal charges for the same thing, is he not?

THE DEFENDANT: I understand that, yes.

THE COURT: So how can you sit there in a statement and say you care about your kids when you round your son to go beat somebody up?

THE DEFENDANT: I did not want him to show up. He showed up on his own --

THE COURT: And while you're standing outside, before you kicked the door in, did you tell your son you better get out of here? You didn't?

THE DEFENDANT: No, Your Honor, I didn't.

THE COURT: You went there to assault this gentleman in his own home. That's exactly what you planned and that's exactly what you did, and you still haven't accepted responsibility for that.

Case No. 2025-T-0062

THE DEFENDANT: I'm -- I'm accepting responsibility. What happened should not have happened. I did not -- my -- I -- I don't know what was going on. Honestly, it was all a blur. I did not intentionally mean for that to transpire as it did. It was all, this is happening and then boom, this is happening.

{¶16} The trial court found that "due to the serious nature of this offense, the victim suffering both physical and psychological harm, and [Appellant] has shown no genuine remorse or acceptance of responsibility, that she is not amenable to any community control sanctions." The trial court sentenced Appellant to two to three years in prison on each of Counts 1 and 2, to be served concurrently, for an aggregate prison sentence of two to three years.

{¶17} On August 26, 2025, the trial court filed the sentencing entry.

{¶18} On September 9, 2025, Appellant timely appealed and raises a single assignment of error.

## Assignment of Error and Analysis

{¶19} Appellant's sole assignment states: "The Trial Court abused its discretion when it denied the right of allocution."[1]

{¶20} R.C. 2929.19(A) and Crim.R. 32(A) govern a criminal defendant's right of allocution. R.C. 2929.19(A) provides, in relevant part:

The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony . . . . At the hearing, *the offender*, the prosecuting attorney, the victim or the victim's representative in accordance with section 2930.14 of the Revised Code, and, with the approval of the court, any other person *may present information relevant to the imposition of sentence in the case. The court shall inform the offender of the verdict of the jury or finding of the court and ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender*.

---

1. The Supreme Court of Ohio's precedent does not impose an abuse-of-discretion standard of appellate review.

Case No. 2025-T-0062

(Emphasis added.)

{¶21} Crim.R. 32(A)(1) provides, in relevant part, that "[a]t the time of imposing sentence, the court *shall* . . . [1] [a]fford counsel an opportunity to speak on behalf of the defendant and [2] address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." (Emphasis added.)  The Supreme Court of Ohio has held that "R.C. 2929.19(A) and Crim.R. 32(A)(1) unambiguously require that an offender be given an opportunity for allocution whenever a trial court imposes a sentence at a sentencing hearing." *State v. Jackson*, 2016-Ohio-8127, ¶ 10.

{¶22} Not only must the trial court permit the defendant to speak, but the trial court must consider the defendant's statement before imposing sentence.  Specifically, R.C. 2929.19(B)(1)(a) provides that "[a]t the sentencing hearing, the court, before imposing sentence, *shall . . . [c]onsider* . . . any information presented at the hearing by any person pursuant to [R.C. 2929.19(A)] . . . ."  (Emphasis added.)

{¶23} The Supreme Court has explained that "[t]he purpose of allocution is to permit the defendant to speak on his [or her] own behalf or present any information in mitigation of punishment." *State v. Reynolds*, 1998-Ohio-171, ¶ 76.  "Trial courts must painstakingly adhere to Crim.R. 32, guaranteeing the right of allocution." *State v. Green*, 2000-Ohio-182, ¶ 40.  "A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his [or her] case or express remorse." *Id*. "'[I]ts legal provenance was the common-law right of allocution.'" *Id.*, quoting *Green v. United States*, 365 U.S. 301, 304 (1961).  As one court has explained, "With historical roots in the common law, the opportunity to plead for mercy is another provision in a

procedural body of law designed to enable our system of justice to mete out punishment in the most equitable fashion possible, to help ensure that sentencing is particularized and reflects individual circumstances." *United States v. Barnes*, 948 F.2d 325, 328 (7th Cir. 1991).

{¶24} "If the court imposes sentence without affording the defendant an opportunity to allocute, then resentencing is required unless the error was invited or harmless." *State v. Beasley*, 2018-Ohio-493, ¶ 200. "A defendant may waive the right to speak in allocution." *Id*. However, a defendant does not waive the right by failing to object. *See State v. Campbell*, 2000-Ohio-183, ¶ 29-30.

{¶25} In *State v. Farhat*, 2022-Ohio-1716 (11th Dist.), this Court determined that a trial court violated a defendant's right of allocution where the court did not give him "an opportunity to address the substance of his offense, offer any mitigating considerations, speak to his lengthy criminal history, or to express remorse for his actions." *Id*. at ¶ 15. Rather, the record demonstrated that the appellant attempted to do so, but the court cut him off and said, "My turn to talk. No, no, no, no." *Id*.

{¶26} By contrast, in *State v. Servantes*, 2023-Ohio-2116 (11th Dist.), we determined that a trial court did not violate a defendant's right of allocution despite the fact that the court "interrupted [the defendant] . . . to inquire whether there were any victims present." *Id*. at ¶ 50. We explained that "[s]imply because [the defendant] was interrupted . . . does not mean he was not afforded a full allocution, especially . . . where the court continued to speak with him after the interruption and where the record indicates he was finished speaking." *Id*. Similarly, in *State v. Roach*, 2016-Ohio-4656 (7th Dist.),

the Seventh District held that "even if a court interrupts a defendant's allocution, his right is not violated if he is permitted to speak after the interruption." *Id*. at ¶ 16.

{¶27} Appellant argues that a trial court "abuses its discretion when a criminal defendant is repeatedly interrupted and badgered with question to the degree that she is left crying and unable to be heard." She asserts that while she was "nominally afforded" allocution, the trial court "repeatedly interrupted" her–"almost from her first word"–and "badgered" her with "question after question." According to Appellant, the trial court's interrogation was "hostile," "accusatory," and "reduced [her] to tears."

{¶28} The State acknowledges the trial court's disruptions but argues that Appellant was permitted to resume her allocution.

{¶29} Upon review of the record, we find that the trial court violated Appellant's right of allocution. This case is not as straightforward as *Farhat*, where the trial court failed to give the defendant *any* opportunity to allocute. However, this case is distinguishable from *Servantes* and *Roach*, where the trial court interrupted the defendant but then gave him a meaningful opportunity to allocute. Here, the trial court repeatedly interrupted Appellant and precluded her from personally addressing the court after those interruptions.

{¶30} In particular, the record reflects that defense counsel spoke on Appellant's behalf and informed the trial court that Appellant wished to read a written statement. Instead of permitting Appellant to speak, the trial court immediately questioned her about her failure to conduct an interview for her PSI. After Appellant explained herself, the trial court questioned her about the facts of her case. The court also interrupted Appellant's

Case No. 2025-T-0062

responses to challenge them.  Appellant then began reading her statement; however, the trial court continuously interrupted her to challenge its content.

{¶31}  Contrary to the State's assertion, the trial court did not permit Appellant to allocute after these interruptions.  Instead, after Appellant read a few sentences of her statement, the trial court again interrupted and instructed her to have defense counsel read the remainder because the court purportedly could not "understand a word" Appellant was "saying."  We are mindful that the paper record before us cannot replicate the tone of the proceedings below; however, based on the trial court's preceding statements, we may reasonably conclude that the court effectively "cowed [Appellant] into silence."  *State v. Allison*, 2025-Ohio-484, ¶ 13 (2d Dist.).

{¶32}  The fact that defense counsel read the remainder of Appellant's statement without interruption was not a legally sufficient substitute.  Under Crim.R. 32(A)(1), a sentencing court owes two separate obligations—one to counsel and one to the defendant "personally."  As the Supreme Court of the United States has observed, "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for [her]self."  *Green*, 365 U.S. at 304.  By precluding Appellant from personally reading her statement, the trial court denied Appellant her last opportunity to plead her own case, express remorse, and present mitigation information.  *See Green*, 2000-Ohio-182, at ¶ 40.  Accordingly, the trial court erred.

{¶33}  The State argues, in the alternative, that the trial court's error was harmless.  Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."  In the context of allocution, the Supreme Court of Ohio has held that an appellant is not required "to present evidence to establish

Case No. 2025-T-0062

that the error was not harmless given that on appeal he [or she] is limited to the record that was made in the trial court and cannot present new evidence." *Jackson*, 2016-Ohio-8127, at ¶ 16.

{¶34} In support of its harmless-error argument, the State quotes the following statement in *Roach*, 2016-Ohio-4656 (7th Dist.): "Even assuming an irregularity in allocation existed, prejudice would be lacking; any irregularity would be harmless due to the presentation of defense counsel, Appellant's written statement, the trial court's personal invitation for Appellant to speak, and the allocution by Appellant that did occur." *Id*. at ¶ 19. As stated, the trial court's conduct in *Roach* is distinguishable from this case; therefore, the appellate court's hypothetical prejudice analysis is inapposite.

{¶35} The State also cites precedent from the Sixth and Tenth Districts determining that a trial court's error is harmless when defense counsel speaks and when the defendant receives a minimal or statutorily-mandated sentence. *See State v. Reese*, 2018-Ohio-2981, ¶ 40-42 (6th Dist.); *State v. Reed*, 2010-Ohio-5819, ¶ 17-19 (10th Dist.). According to the Sixth District, the less likely that a defendant's allocution would have affected the case's outcome, the more likely that the error was harmless. *Reese* at ¶ 39.

{¶36} We find those cases to be distinguishable. First, although Appellant's offenses carried a presumption of prison, it was not mandatory. *See* R.C. 2929.13(D)(1). The trial court was permitted to impose community control sanctions if it made specific findings. *See* R.C. 2929.13(D)(2). Second, we will not characterize a prison term as a "minimal" sentence when community control was a potential alternative. Third, for the reasons explained below, we cannot say that Appellant's allocution would not have affected her case's outcome.

Case No. 2025-T-0062

{¶37} Finally, the State relies on the Ninth District's decision in *State v. Anderson*, 2024-Ohio-4735 (9th Dist.), *appeal not allowed*, 2025-Ohio-231. In that case, the trial court did not ask the appellant if he had any anything to say before imposing sentence. *Id*. at ¶ 2. However, the appellant had told defense counsel during a conversation at the sentencing hearing that he did not want to make a statement. *Id*. In finding harmless error, the appellate court explained that pursuant to R.C. 2929.13(D)(1), "[o]ffenders who are convicted of or plead guilty to a second-degree felony face a presumption that a prison term is necessary to comply with the principles and purposes of sentencing." *Id*. at ¶ 10. "In order to overcome that presumption, a trial court must determine that community control would adequately punish the offender and protect the public from future offenses and that community control would not demean the seriousness of the offense" pursuant to R.C. 2929.13(D)(2)(b). *Id*. "This determination is made by considering any relevant factors, including those listed in Section 2929.12(B) and (C) indicating that the offender's conduct is more or less serious than conduct normally constituting the offense." *Id*.

{¶38} According to the *Anderson* court, "[t]he trial court conducted that analysis." *Id*. at ¶ 11. Specifically, the trial court "acknowledged statements made by defense counsel and [the appellant's] mother that supported mitigation"; however, the court's "overriding concern related to" the seriousness factors under R.C. 2929.19(B). *Id*. The appellate court concluded that "[i]n light of this, and considering [the appellant's] representation to counsel that he did not want to say anything," any error was harmless. *Id.*

{¶39} We find *Anderson* to be distinguishable. Like in *Anderson*, Appellant's offenses carried a presumption of prison time unless the trial court made specific findings.

However, unlike in *Anderson*, Appellant wanted to speak and attempted to do so. In addition, unlike in *Anderson*, the trial court expressly found that Appellant had "shown no genuine remorse or acceptance of responsibility." Those factors related to Appellant's likelihood of recidivism under R.C. 2929.12(D) and (E) and 2929.13(D)(2)(a). Appellant's written statement directly addressed those factors, but the trial court erroneously precluded Appellant from personally reading it. Given the emphasis the trial court placed on those factors, and since the court weighed them against Appellant, we cannot say that the error was harmless. *See In re D.C.*, 2025-Ohio-5147, ¶ 31 (8th Dist.) (error not harmless where trial court heavily emphasized appellant's purported lack of remorse); *In re S.D.*, 2014-Ohio-2528, ¶ 34-35 (8th Dist.) (error not harmless where trial court used appellant's purported lack of remorse against her).

{¶40} Appellant's sole assignment of error has merit. The judgment entry of sentence is reversed, and this matter is remanded for resentencing. Prior to imposing Appellant's sentences at the resentencing hearing, the trial court shall afford Appellant her right of allocution.

{¶41} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded for resentencing.

ROBERT J. PATTON, J., concurs,

MATT LYNCH, P.J., dissents with a Dissenting Opinion.

_____

MATT LYNCH, P.J., dissents with a Dissenting Opinion.

Case No. 2025-T-0062

{¶42}  I disagree with appellant's contention that the trial court violated her right to allocution under Crim.R. 32(A).  The trial court complied with Crim.R. 32(A) and provided appellant the necessary opportunity for allocution at sentencing.

{¶43}  Crim.R. 32(A) provides, in relevant part: "At the time of imposing sentence, the court shall . . . (1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."

{¶44}  *The trial judge afforded defense counsel an opportunity to speak on behalf of appellant.*  Defense counsel gave a lengthy statement to the court in mitigation of punishment.  Counsel informed the court, at the conclusion of her statement, "I do believe that Miss Noble has also written something, Your Honor, that she would like to read, too."

{¶45}  *The trial judge addressed appellant personally*.  Specifically, the judge questioned why appellant did not give a statement to the Adult Probation Department and about her conduct that resulted in the charges against her.  Appellant responded to each of the judge's questions.  The judge asked who was responsible for the incident; appellant answered, "I was responsible.  My words."

{¶46}  *The trial judge invited appellant to read her statement.*  The judge said to appellant, "Go ahead.  If you want to read your statement, go ahead."  As appellant began her allocution, the trial judge asked her four rapid-fire questions:

THE DEFENDANT: Your Honor, I want to begin by apologizing to the Court, my family –

THE COURT: Don't apologize to me.  Who should you be apologizing to?

THE DEFENDANT: And most importantly, the victim.

THE COURT: Who is the victim?

Case No. 2025-T-0062

THE DEFENDANT: Keith Garland.

THE COURT: And why did you assault him?

THE DEFENDANT: I did not – it was not supposed to happen like that.

THE COURT: Are you going to stand there and tell me you did not assault the victim?

THE DEFENDANT: I did not.

{¶47} *The trial judge permitted appellant to resume reading her written statement.* The judge said to appellant, "All right. Go ahead, finish your statement." Appellant did so, as reflected in thirteen lines of transcript. The judge interrupted the allocution one last time, asking appellant to "slow down and speak real loud so we can hear you, because I can't understand a word you're saying." Appellant apologized to the court.

{¶48} *The trial judge suggested that defense counsel read appellant's written statement into the record.* The judge said to appellant, "Why don't you let your attorney read that for you, because if all you're going to do is read it, she can read it." Defense counsel immediately began to recite the remainder of appellant's personal written statement, without interruption.

{¶49} *The trial judge again addressed appellant personally.* The judge referred to appellant's criminal history and her son's criminal charges for his involvement in the incident. The judge stated, "You went there to assault this gentleman in his own home. That's exactly what you planned and that's exactly what you did, and you still haven't accepted responsibility for that." Appellant responded, "I'm accepting responsibility. What happened should not have happened. I did not . . . I don't know what was going on. Honestly, it was all a blur. I did not intentionally mean for that to transpire as it did.

Case No. 2025-T-0062

It was all, this is happening and then boom, this is happening." The trial judge then inquired of the prosecutor and the victim, neither of which had anything to present in the way of sentencing, and proceeded to sentence appellant.

{¶50} Upon review of the transcript and the parties' arguments in this case, I disagree with the majority's conclusion that the trial judge violated appellant's right of allocution by repeatedly interrupting her and precluded her from personally addressing the court after those interruptions. Moreover, any error that may have occurred regarding appellant's right to allocution was either harmless or invited. Accordingly, resentencing is not required in this case. See *State v. Campbell*, 90 Ohio St.3d 320, 326 (2000) ("In a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error.").

{¶51} *Any error in interrupting appellant's allocution was harmless error*. "'[E]ven if a court interrupts a defendant's allocution, [her] right is not violated if [she] is permitted to speak after the interruption.'" *State v. Servantes*, 2023-Ohio-2116, ¶ 51 (11th Dist.), quoting *State v. Roach*, 2016-Ohio-4656, ¶ 16 (7th Dist.). Thus, any error due to a sentencing court's interruption is harmless where the defendant was invited to speak, did speak, and was given an opportunity to continue speaking after the interruption. See id., citing *State v. Neff*, 2020-Ohio-4818, ¶ 15 (7th Dist.). Here, appellant was invited to read her written statement, she read a portion of her written statement, and she was given an opportunity to continue after the interruption by the trial judge. The entire written statement was recited to the court, initiated by appellant and concluded by defense counsel. Moreover, defense counsel made a lengthy statement on behalf of appellant

Case No. 2025-T-0062

advocating for a lesser penalty. Under these facts, any error in interrupting appellant's allocution was harmless.

{¶52} *Any error in suggesting and allowing defense counsel to read the remainder of appellant's written statement into the record was invited error.* "The doctrine of invited error holds that a litigant may not 'take advantage of an error which he himself invited or induced.'" *Campbell at 324, quoting Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co*., 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. "The record must demonstrate that defense counsel induced or was actively responsible for the trial court's error." *State v. Thomas*, 2020-Ohio-4635, ¶ 98 (11th Dist.), citing *Campbell* at 324, citing *State v. Kollar*, 93 Ohio St.89, 91 (1915). Thus, invited error has been found "when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the trial judge proposed." *Campbell* at 324; *Thomas* at ¶ 98 (invited error might be found where defense counsel suggests, requests, or actively consents to an improper procedure). Here, after initially asking appellant to "slow down and speak real loud," the trial judge stated that it could not understand "a word" appellant was saying and suggested to appellant, "Why don't you let your attorney read that for you, because if all you're going to do is read it, she can read it." Without further ado or interruption, defense counsel recited the remainder of appellant's own personal statement, which reasonably led the trial judge to conclude that appellant and her counsel affirmatively consented to the judge's suggestion. Any error in this procedure was therefore invited, and appellant cannot now claim otherwise.

{¶53} I respectfully dissent from the majority's decision.

Case No. 2025-T-0062

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that Appellant's sole assignment of error has merit. The judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded for resentencing. Prior to imposing Appellant's sentences at the resentencing hearing, the trial court shall afford Appellant her right of allocution.

Costs to be taxed against Appellee.


_____
JUDGE JOHN J. EKLUND


_____
JUDGE ROBERT J. PATTON,
concurs


_____
PRESIDING JUDGE MATT LYNCH,
dissents with a Dissenting Opinion

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-T-0062